Dean Thamas
14626 Red Gum Street
Moreno Valley, CA 92555
dlthomas32@gmail.com
951-413-9071

no fax

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Dean Thamas
   *Plaintiff*

v.

UNION ADJUSTMENT
COMPANY, INC.
   *Defendants*

)
)
)
)
)
)
)
)
)
)
)
)

ED CV 13 - 01325 JFW(SP)

**VERIFIED COMPLAINT**

## INTRODUCTION

1.  This is an action brought for damages out of violations of the Fair Debt Collection Practices Act ("hereinafter FDCPA") 15 U.S.C. § 1692, et seq., and Rosenthal Fair Debt Collection Practice Act, California Civil Code *§ 1788*, et seq. (hereinafter "ROSENTHAL, Fair Credit Reporting Act (hereinafter "FCRA") *15 U.S.C. § 1681 et seq.,* and Telephone Consumer Protection Act (hereinafter "TCPA"), 47 U.S.C. *§ 227,* et seq.

///
///
///

ORIGINAL

FEE PAID

## PRELIMINARY STATEMENT

2.   Plaintiff, Deon Thomas makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, which Plaintiff alleges on personal knowledge.

3.   While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.  Unless otherwise stated, the conduct engaged in by Defendant took place in Riverside County, California.

4.   All actions of the Defendant violations as alleged were carried out knowingly, willfully, and with intent, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

5.   The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which is harassing, oppressive or abusive practices by debt collectors; "it also requires debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt. FDCPA 15 U.S.C. § 1692, et seq.

6.   The TCPA restricts the making of telephone calls to phones and states "It shall be unlawful for any person within the United States to initiate any telephone call using an artificial or prerecorded voice to deliver a message with the prior express consent of the called party".  TCPA 47 U.S.C. § 227, et seq.

7.   FCRA *15 U.S.C. § 1681 et seq.,* was implemented to assess the quality of the furnisher's of information compliance to ensure compliance with the FCRA, as amended by the Fair and Accurate Credit Transaction Act of 2003 (FACT Act).  Also, to determine the reliance you can place on furnisher's of information internal controls and procedures for monitoring the person's compliance with the FCRA.  Further, to

direct corrective action when you identify violations of law, or when the furnisher's of information policies or internal controls are deficient.

## JURISDICTION and VENUE

8.  This court has Jurisdiction pursuant to 15 U.S.C. § 1692k (d), 15 U.S.C. §1681p, 28 U.S.C § 1331, 47 U.S.C § 227(b)(3) and 28 U.S.C § 1367, any claim under the state law brought by the Plaintiff are proper under the doctrine of supplemental jurisdiction.

9.  Venue is proper pursuant to 28 U.S.C. § 1391(b).

10. The occurrences which give rise to this action occurred in Riverside County, California and Plaintiff resides in Riverside County, California.

11. Venue is proper in the Central District of California

## PARTIES

12. The Plaintiff in this lawsuit is Deon Thomas, (hereinafter "Plaintiff" or "Thomas") who at all times relevant herein was a resident of Riverside County, California.

13. The Defendant in this lawsuit is UNION ADJUSTMENT COMPANY, INC. ("UNION" or "Defendant") who is an unknown entity with offices at 3214 W Burbank BLVD, Burbank, CA 91505, who transacts business as a debt collector in Riverside County, California.

## STATEMENT OF FACTS

14. Plaintiff is a natural adult person, is a consumer as defined in 15 U.S.C. §1692a (3), FCRA 15 U.S.C. §1681(a), and a debtor as defined in Cal. Civil Code § 1788.2(h).

15. Union have alleged that Thomas incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the

transaction are primarily for personal, family or household purposes, and is therefore a "debt" as the term is defined by FDCPA 15 U.S.C. § 1692a(5), Cal. Civil Code § 1788.2(d) and that Thomas is obligated to pay them.

16.   UNION are debt collector as defined in 15 U.S.C. §1692a (6) and a collection agency as defined in Civil Code § 1788.2(c).

17.   Defendant Union is a "furnisher of information" as that term is described in the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2 (a) & (b), and a "person" as defined by FCRA 1681a(b).  *See* (Exhibit D, FCRA15 U.S.C. § 1681s-2 (a) & (b)).

18.   At a time unknown, UNION acquired information regarding an alleged obligation that Plaintiff allegedly occurred and owing.

19.   Defendant used instrumentalities of interstate commerce or the mails in a business, the principal purpose of which is the collection of any debt, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due by or to another person or entity.

20.   Union mailed an initial collection notice to Thomas dated on April 13, 2012, with a contact name of Jonathan White, making a claim that Thomas owes an alleged obligation.  *See* (Plaintiff's Affidavit).

21.   The notice from Union contained information within it that was false, erroneous and inaccurate.

22.   Thomas sent a Dispute correspondence demanding validation and cease and desists from any contact by phone to Union dated on April 18, 2012 via Read Notifyc.com, email Proof of Posting Certificate, with a reference # 20129502 , within the required time according to

FDCPA 15 U.S.C. § 1692g.  *See* (Plaintiff's Affidavit, Exhibit A, FDCPA 15 U.S.C. § 1692g).

23.    Thomas sent a Dispute correspondence demanding validation and cease and desist from any contact by phone to Union dated on April 19, 2012 by U.S. Postal Service, certified mail no. 7011 0470 0001 7943 8864, disputing the validity of the noticed mailed to him dated on April 13, 2012.  *See* (Plaintiff's Affidavit).

24.    In connection with the collection of an alleged debt, UNION and/or representative(s), employee(s) and/or agent(s) sent initial collection notice to Plaintiff dated on April 13, 2012.  UNION and/or representative(s), employee(s) and/or agent(s) knew or should have known that the alleged debt they attempted to collect was non-existent, and Plaintiff did not owe UNION any money.

25.    Union mailed a second collection notice to Thomas dated on April 19, 2013, sent by Dave Gill and Union continued collection action by failing to properly validate any alleged obligation allegedly due and owing by Thomas, after receiving validation and cease and desist demand dated on April 18, 2012 and April 19, 2012, thus violating FDCPA 15 U.S.C. § 1692g(b).  *See* (Plaintiff's Affidavit, Exhibit A, FDCPA 15 U.S.C. § 1692g).

26.    The notice dated on April 19, 2012 sent by Union and accompanying document did not have ANY identifiable information within it to assert Thomas has any responsibility to them.  Union failed to properly validate as requested by Thomas an alleged obligation, yet Union **continued collection action,** also they requested payment **prior to the 30 day requirement,** thus violating the FDCPA 15 U.S.C. § 1692g.  *See* (Exhibit A, FDCPA 15 U.S.C. § 1692g).

27. The April 19, 2012 notice and accompanying document sent by Union were false and erroneous, and they knew or should have know this because Thomas' name and address was nowhere on their document, and Thomas never owned the type of vehicle alleged therein during this time period, thus violating  FDCPA 15 U.S.C. § 1692e.  *See* (Plaintiff's Affidavit, Exhibit B, FDCPA 15 U.S.C. § 1692e).

28. Thomas responded with a letter dated on April 24, 2012 to Union's April 19, 2012 collection notice, cordially information them they sent an unsubstantiated demand for payment, failed to validate and continued collection actions, wherein they violated Thomas' rights according to the law.  *See* (Plaintiff's Affidavit).

29. From April 30, 2012 to August 2, 2012 and forward, Union were calling Thomas using Automatic Telephone Dialing System capable equipment ("ATDS"), while blocking the Caller ID.  Thomas answered the calls and when eventually a live voice stated it was Union on the line, While Thomas informed the *"Collectors"* each time that Union had no business with him, no permission to call him and they were violating consumer protection laws by doing so.  The calls have continued to the present time.  See (Plaintiff's Affidavit).

30. While Union's calls to Thomas were made to his land line, further study of the Consumer Protection Statues has revealed that the use of ATDS capable equipment and blocking the caller ID, does in fact constitute violation of the TCPA 47 U.S.C. § 227 et al. *See* (Exhibit E, TCPA 47 U.S.C. § 227(b)(A) &(B)).

31. The letter Thomas sent to Union dated on April 18, 2012 and April 19, 2012, specifically requested Union to cease and desist contact by phone.

32. The numerous and repeated calls after Thomas demanded validation and to cease and desist until such time, Union refused to adhere to the laws, which constitutes a violation(s) of the FDCPA 15 U.S.C. § 1692d(5) and 1692g(b).  *See* (Exhibit A & C, FDCPA 15 U.S.C. § 1692g, § 1692d).

33. On August 2, 2012, Union called Plaintiff multiple times (4), within 1 hour, and did not leave callers identification.

34. Thomas obtained his consumer credit report with the three major Consumer Reporting Agencies (CRA) Experian, TransUnion and Equifax in June of 2012.  *See* (Plaintiff's Affidavit).

35. Thomas found after examination of his consumer credit reports that Defendant, Union obtained his consumer report and had been reporting false and erroneous information to all three credit reporting agencies since May of 2012.  Thomas had never had any business relationship of any kind with Union or any other entity named by them. *See* (Exhibit G, FCRA 15 U.S.C. § 1681b).

36. Union knew or should have known they were communicating false, erroneous, unverified and invalidated information as a trade line to all three credit agencies, as they failed to validate Thomas' April 18, 2012 demand letter, and did not make the account in dispute, violated FDCPA 15 U.S.C. § 1692e(8).  *See* (Exhibit B, FDCPA 15 U.S.C. § 1692e).

37. Thomas filed disputes of the validity of the entries made by Union with all three CRA's Experian dated on June 13, 2012, TransUnion dated July 5, 2012 and Equifax dated July 5, 2012 by U.S. Postal Certified Mail.  *See* (Plaintiff's Affidavit).

38. As a result of Thomas disputes after the CRA's notified Union, they failed to modify or delete from all three CRA's, and the end result was TransUnion reported the information was deleted.

Experian reported the information was updated and would remain.  Equifax reported the information was verified and would remain.

39.  In December of 2012 Thomas again obtained his consumer credit report with the three major CRA's whereby he discovered Union was still reporting false and erroneous information on Experian and Equifax.  *See* (Plaintiff's Affidavit).

40.  On February 4, 2013 Thomas disputed again with Equifax, as a result of Thomas' disputes after the CRA's notified Union, and the entry placed by Union was still reporting negatively on his consumer credit report and they did not remove entry.  See (Plaintiff's Affidavit).

41.  On February 16, 2013 Thomas disputed again with Experian, as a result of Thomas' disputes after the CRA's notified Union, and the entry placed by Union was still reporting negatively on his consumer credit report and they did not remove entry.  See (Plaintiff's Affidavit).

42.  The false and erroneous information placed by Union were updated and information remained.

43.   On April 19, 2013, Thomas sent yet another dispute notice to Union informing them of the continued collection action by reporting erroneous and inaccurate information on his consumer credit report, entries with Experian and Equifax and they are damaging his credit worthiness and reputation.  *See* (Plaintiff's Affidavit).

44.  Thomas again included attachment of documents in his April 19, 2013 notice to Union.  The documents provided by Thomas clearly showed an alleged account Union tried to collect had no association with Thomas, and clearly showed he was not liable for any obligation to Union.

45.  Thomas provided multiple documents to Union which he himself pulled from a computer, just as Union did with the document they provided to him as evident of an alleged obligation.  The documents did not have any verifiable information about any person what so ever, so it could belong to anyone else, but not Thomas.

46. The documents Thomas pulled off the computer and the document Union provided as verification of an alleged account does not have any name(s), social security number(s), address(s) or any other identifiable information to prove an alleged obligation belong to Thomas or any other person.

47. If there were any written contract or obligation from Thomas to Union or any other entity for that matter, where documents may exist showing when or how the alleged obligation incurred, Union failed to provide this to him, after multiple disputes by Thomas.

48. There is little to no documentations beyond rudimentary information which would allow Union to calculate any amount of an alleged debt owed by Thomas and Union failed to include any identifiable information to assert an alleged obligation owed by him i.e.; name, last known address, telephone number, social security number, name of original creditor, original account number and current owner of any alleged debt.

49. The contrive documentation and information provided by Union as verification of an account does not belong to Thomas, yet they passed it on as true and correct, and they knew or should have known the alleged information was false and erroneous.

50. On May 14, 2013 Thomas mailed yet again a dispute letter to Experian and Equifax, as a result of Thomas' disputes after the CRA's notified Union, and the entry placed by Union was still reporting negatively on his consumer credit report and Union still have not removed entry. *See* (Plaintiff's Affidavit).

51. Union have continued the report erroneous and inaccurate information on Thomas' Experian and Equifax consumer reports after multiple disputes for a period of 15 months, from May of 2012 to present date. See (Plaintiff's Affidavit).

52. Upon Plaintiff's information and belief Union failed to perform a reasonable reinvestigation required by law, they would have known definitively that the information they were furnishing was incorrect and that it should have been removed from the credit reporting agencies records.

53. Upon Plaintiff's information and belief Union had never provided any signed verification, validation or accounting of any alleged account or copy of any signed contract or agreement by Thomas.

54. Upon Plaintiff's information and belief Union failed to reinvestigate the alleged account after multiple disputes made by Thomas as required by the FCRA.

55. The amendments to the FCRA made by the Consumer Credit Reporting Act of 1996 raised the bar of compliance with the law by imposing a higher duty to reinvestigate on the original source providing information to the credit reporting agencies.  Congress clearly intended the furnisher of credit date to perform a more exacting investigation than merely parroting their own internal data, which the consumer has disputed.

56. Upon Plaintiff's information and belief  Union ignored Thomas' timely demand for validations and disputes, and Union avoidance of their legal obligation to reinvestigate and go beyond merely electronic data obtained by the unverified and unauthenticated alleged account information, Union has violated the clear mandate Congress intended and enacted under 15 U.S C. § 1681d-2(b).  *See* (Exhibit D, FCRA15 U.S.C. § 1681s-2(b)).

57. Upon Plaintiff's information and belief, notwithstanding Defendant's insistence that Thomas prove to the them that the information they were consistently and continuously reporting to the consumer credit reporting agencies was erroneous, the fact remains that the FCRA requires a reasonable reinvestigation and a deletion of inaccurate information from the consumer's credit reports after said consumer has disputed the information being provided.  Not only have the

Union failed to comply with l5U.S.C. g 1681s-2(b), by not performing a reasonable reinvestigation they have knowingly and willfully continued to furnish unverified and unauthenticated information to the credit reporting agencies for the past 15 months, since May of 2012 to present. *See* (Exhibit D, FCRA15 U.S.C. § 1681s-2(b)).

58. Upon Plaintiff's information and belief Union have knowingly reported inaccurate information about Thomas, after failing to reinvestigate to the major credit reporting agencies Equifax and Experian damaging Thomas since at least May of 2012 in an attempt to coerce and deceive him into paying amounts not owed to them by Thomas.

59. Upon Plaintiff's information and belief Union continued reporting of false and erroneous information to the credit reporting agencies without performing proper reinvestigation after Thomas' multiple disputes not only violated FCRA 15 U.S C. *§* 1681s-2(b) the first time, but a violation occurs each and every time the furnisher knowingly and willfully does so.

60. Upon Plaintiff's information and belief, each and every time Union furnishes information to the credit reporting agencies without first performing a reasonable reinvestigation after the reinvestigation has been demanded constitutes a new and separate deliberate violation of the statute.

61. Upon Plaintiff's information and belief reporting of false and erroneous information to the credit reporting agencies is a violation FDCPA, 15 U.S C. *§* 1692e and *§* 1692g, which re-ages the relative statute of limitations on such violations each and every time they knowingly and willfully do it.

62. Upon Plaintiff's information and belief Union did not validate any alleged debt yet continued to furnish negatively on Plaintiff's Experian and Equifax consume report, up to and including the filing of this complaint.

63. Upon Plaintiff's information and belief, in this instance, through the means described herein, in the course of collection an alleged non-existent debt from Plaintiff, Union and/or representative(s), employee(s) and/or agent(s), directly and indirectly, has represented to Plaintiff, expressly or by implication, that the alleged debt was valid and that Plaintiff had an obligation to pay the alleged debt.

64. Any violations of FDCPA that may have occurred prior to the filing of this complaint are time barred and Plaintiff does not make a claim, however it is relevant to the case as far as a chronological order of events alleged herein.

65. Upon Plaintiff's information and belief Union's principle officers had the authority to control and direct the debt collection activity of their representative(s), employee(s) and/or agent(s), or has participated in the misrepresentation and other misconduct of their representative(s), employee(s) and/or agent(s) in connection with the collection of debt, and knew or should have known of the misrepresentation and other misconduct of their representative(s), employee(s) and/or agent(s).

66. Violation of FDCPA brought forth herein are within the statute of limitations as defined in the FCRA 15 U.S.C. § 1692k(d) and Cal. Civ. Code 1788.30(f).

67. Violation of FCRA brought forth herein are within the statute of limitations as defined in the FCRA 15 U.S.C. § 1681p.

68. Violation of TCPA brought forth herein are within the statute of limitations as defined in the TCPA 47 U.S.C. § 227 et seq.

69. Upon Plaintiff's information and belief Union dissemination of inaccurate information about the Plaintiff has and is causing the following damages:

    a) Personal expenses related to disputing the allegedly inaccurate information;

b) Injuries to his credit reputation, undue worry and loss of happiness inside of household resulting from the distribution of incorrect and disparaging information to parties both known and unknown;

c) A diminished credit score which may hinder Plaintiff's ability to obtain credit in the future.

70. Upon Plaintiff's information and belief, the Court have constantly held that any person who willfully fails to comply with any requirements of the FCRA may be liable for punitive damages, FCRA 15 U.S.C. § 1681n.  To establish willful noncompliance, a Plaintiff must prove that the Defendant(s) *"knowingly and intentionally committed an act in conscious disregard for the rights of others need not show 'malice or evil motive.'"*  Thomas has repeatedly attempted to resolve the controversy over the disputed alleged account with Union to no avail over a substantial length of time.  For this reason Thomas had no other recourse beyond litigation to resolve these matters.

71. Upon Plaintiff's information and belief, there is no debt that could exist as to the basis of this instant action, rather the basis is the illegal, unconscionable and invasive behavior of Union in their attempts to collect a non-existent alleged debt from Thomas.  Thomas has attempted on multiple occasions with dispute letters to provide Union the opportunity to cure said egregious behavior to no avail.

72. Upon Plaintiff's information and belief Union's and/or representative(s), employee(s) and/or agent(s) actions constitute conduct highly offensive to a reasonable person and as a result of Union's and/or representative, employee and/or agent(s) actions they violated Plaintiff's rights.  Union and/or representative(s), employee(s) and/or agent(s)

1    conduct makes them liable to Plaintiff for actual damages, statutory damages, punitive

2    damages, costs, and any attorney's fees.

3

**COUNT I**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. § 1681**
4
**WILLFUL NON-COMPLIANCE BY DEFENDANT UNION ADJUSTMENT**
5
**COMPANY, LLC**

6
73.    Plaintiff restates and re-alleges herein all previous paragraphs 1-72.
7
74.    Discovery of violations brought forth herein regarding FCRA occurred from June 2012 to
8
9          present and are within the statute of limitations as described in the FCRA15 U.S.C. § 1681p.

10   75.    Plaintiff is a consumer within the meaning of the FCRA 15 U.S.C. § 1681a(c).

11   76.    Experian and Equifax are credit reporting agency within the meaning of 15 U.S.C. §

12         1681a(f).

13
     77.    Consumer credit report is a consumer report within the meaning of the FCRA 15 U.S.C. §
14
15         1681a(d).

16   78.    The FCRA, 15 U.S.C. § 1681b defines the permissible purpose for which a person may

17         obtain a consumer credit report. *See* (Exhibit G, FCRA15 U.S.C. § 1681b).

18   79.    Union is a "furnisher of information" as that term is described in the FCRA, 15 U.S.C. § 1681s-

19         2 (a) & (b), and a "person" as defined by FCRA § 1681a(b).

20
     80.    Thomas has never had any business dealings or any accounts with, made application for credit
21
22         from, made application for employment with, applied for insurance from, or received a bona

23         fide offer of credit from Union, as described FCRA § 1681b.

24   81.    On May of 2012 Union obtained the Experian, Equifax and TransUnion consumer credit report

25         of Thomas with no permissible purpose in violation of FCRA 15 U.S.C. § 1681b.  Thomas had

26         no account whereby Union could claim permissible purpose and said action were a clear
27
28         violation of his privacy.  No claim of permissible purpose connected to the collection of a debt

could exist because Union was fully aware of the **"alleged account"** they were claiming were in dispute and they had not properly **"validated"** as per Thomas's timely demand.

82.   At no time did Thomas give his consent for Union to acquire his consumer credit report from any credit reporting agency.

83.   Plaintiff has never had any business dealings or any account with, made application for credit from, made application for employment with, applied for insurance from, or received a bona-fide offer of credit from UNION to acquire consumer report from any credit reporting agency.

84.   UNION misrepresented the reason they obtained Plaintiff consumer credit report, and obtained the credit report under false pretense.

85.   On or about May of 2012, the action of Union obtaining the Experian, Equifax and TransUnion consumer credit report from the Plaintiff with no permissible purpose, is in violation of FCRA 15 U.S.C. § 1681b.

86.   Union had a duty to properly ascertain if there was any legitimate permissible purpose before obtaining Thomas's credit report and Union breached said duty.  There was no account that Union had any right to collect to have had permissible purpose and therefore Thomas is entitled to damages for breach of said duty.

87.   Pursuant to 15 U.S.C. 1681n, any person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in and [sic] amount equal to the sum (l) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100.00 and not more than $1,000.00 (2) such amount of punitive damages as the court may allow, and (3) in the case of any successful action to

1    enforce any liability under 15 U.S.C. 1681n, the costs of the action together with reasonable

2    attorney's fees.  *See* (Exhibit F, FCRA15 U.S.C. § 1681n).

3

4           **WHEREFORE,** Plaintiff demands judgment for damages against UNION for

5    statutory damages of $1000.00, punitive damages to be determined at trial  court, and

6    costs, pursuant to 15 U.S.C. § 1681n.

7

8                              **<u>COUNT II</u>**
         **VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. § 1681**
9            **WILLFUL NON-COMPLIANCE BY DEFENDANT UNION ADJUSTMENT**
                                  **COMPANY, LLC**
10

11   88.   Plaintiff restates and re-alleges herein all previous paragraphs 1-72.

12   89.   Discovery of violations brought forth herein regarding FCRA occurred from June 2012 to

13         present and are within the statute of limitations as described in the FCRA15 U.S.C. § 1681p.

14
15   90.   Plaintiff is a consumer within the meaning of the FCRA 15 U.S.C. § 1681a(c).

16   91.   Experian and Equifax are credit reporting agency within the meaning of 15 U.S.C. §

17         1681a(f).

18   92.   Consumer credit report is a consumer report within the meaning of the FCRA 15 U.S.C. §

19         1681a(d).

20   93.   Union is a "furnisher of information" as that term is described in the FCRA, 15 U.S.C. § 1681s-

21         2 (a) & (b), and a "person" as defined by FCRA 15 U.S.C. § 1681a(b).

22
23   94.   Since June of 2012 to present date, Union as a direct result of its failure to conduct a

24         reasonable reinvestigation, has continuously reported information which it know or should

25         have known to be false and inaccurate to all three credit reporting agencies, Experian,

26         Equifax and TransUnion, in blatant violation of the FCRA 15 U.S.C. § 1681s-2(b).

27

28

95. To date Union has committed at least 15 separate violation of 15 U.S.C. § 1681s-2(b), by deliberately failing to reinvestigate before reporting to the consumer reporting agencies to the best of Thomas's knowledge.  Further violations may be identified in the discovery process.

96. Thomas, by filing a dispute with the consumer reporting agencies, Experian dated on June 13, 2012, TransUnion dated July 5, 2012 and Equifax dated July 5, 2012, invoked his private right of action to assert claims against Union arising under FCRA 15 U.S.C. § 1681s-2(b).

97. At no time has Union ever provided any valid justification they may have for reporting false and inaccurate information to the credit reporting agencies, even though Thomas made a timely demand that they do so.  Union had a duty to properly ascertain if there was any **legitimate** account belonging to Thomas before reporting such information to the credit reporting agencies, and Union breached said duty.  There was no account that Union had any right to collect to have had lawful standing and authority to report on Thomas credit reports and therefore Thomas is entitled to damages for breach of said duty.

98. Thomas made multiple attempts to dispute and provide ample opportunity for Union to engage in mitigation of damages and reach a settlement for their violations before taking civil action against them.  Thomas was not able to settle this matter with Union prior to litigation; however it was not for the lack of attempts.

99. Pursuant to 15 U.S.C. 1681n, any person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in and [sic] amount equal to the sum (l) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100.00 and not more than $1,000.00 (2) such amount of punitive damages as the court may allow, and (3) in the case of any successful action to

1    enforce any liability under 15 U.S.C. 1681n, the costs of the action together with reasonable

2    attorney's fees.

3

4            **WHEREFORE**, Plaintiff demands judgment for damages against UNION for

5    statutory damages of $1000.00, for each such violations, each publication, actual

6    damages, punitive damages to be determined at trial court, and costs, pursuant to 15 U.S.C. §

7    1681n.

8                                    **COUNT II**
9            **VIOLATION OF THE FCDPA 15 U.S.C. § 1692, et seq.**
                                     **By UNION**
10

11   100. Plaintiff restates and re-alleges herein all previous paragraphs 1-72.

12   101.    The Plaintiff is a consumer as defined in 15 U.S.C. § 1692a (3).

13   102.    Defendant are debt collectors as defined in 15 U.S.C. § 1692a (6).

14
15   103.    Union blatantly failed after initiating first communication April of 2012 to Thomas,

16           in connection with the collection of a debt and receiving validation notice within the 30

17           days requirement and multiple disputes, continued collection and failing to cease until

18           they properly validated by reporting in Thomas consumer report from May of 2012 to

19           filing of this action, in violation of 15 U.S.C § 1692g(b).

20   104.    Union made multiple calls to Thomas' land line continuing collection actions, after

21
22           receiving a cease any call letter from Thomas dated April 18, 2012.

23   105. Defendant, Union by reporting an "alleged" debt as a "debt collector" to a consumer

24           reporting agency generating "communication" in connection with the collection of a

25           debt which they know was incorrect, from May of 2012 to filing of this action, in

26           violation of 15 U.S.C § 1692e(8).

27
28   106.    Union violated 15 U.S.C § 1692e(2), by making false, deceptive, or misleading

representation to the three consumer reporting agencies Experian, Equifax and TransUnion on multiple occasions as to the character, amount or legal status of an alleged debt, after receiving multiple disputes from Thomas.

107.    Union violated 15 U.S.C § 1692d(5), by refusing to respond to Thomas's timely demand for validation and disputes notices, harassed him with numerous collection calls repeatedly.

108.    Defendant violated 15 U.S.C § 1692e (10) by use of false and deceptive means to collect or attempt to collect a nonexistent alleged debt or obtain information concerning a consumer.

109.    Union has not produced any evidence or factual documentation of any "alleged debt" Thomas could be responsible for, but violated Thomas with impunity for nearly one and one half years by continued violation of the consumer protection statutes.

110.    Thomas has never had any business relationship with Union or any person's named by them.

111.    Due to the repeated and continuing violation of the FDCPA, Plaintiff is entitled to actual and statutory damages under 15 U.S.C § 1692(k).

    **WHEREFORE,** Plaintiff demands judgment for $1000.00 damages against UNION for actual damages, statutory, any attorney's fees and cost, pursuant to 15 U.S.C. § 1692(k).

///

///

///

## COUNT II
## VIOLATION OF THE ROSENTHAL CAL. CIVIL CODE *§ 1788, et seq.*

**VERIFIED COMPLAINT**  Page 19 of 24

**By UNION**

112.  Plaintiff restates and re-alleges herein all previous paragraphs 1-72.

113.  Pursuant to § 1788.2(C) the Defendant are debt collectors, a person who in the ordinary course of business, regularly, on behalf of himself, herself or others, engages in debt collection.

114.   Defendant are subject to the Rosenthal Fair Debt Collection Act Cal. Civil Code § 1788, et seq.

115.   The Plaintiff is a consumer as defined in 15 U.S.C. § 1692a (3).

116.   Defendant are debt collectors as defined in 15 U.S.C. § 1692a (6).

117.   Union blatantly failed after initiating first communication April of 2012 to Thomas, in connection with the collection of a debt and receiving validation notice within the 30 days requirement and multiple disputes, continued collection and failing to cease until they properly validated by reporting in Thomas consumer report from April of 2012 to filing of this action, in violation of 15 U.S.C § 1692g(b).

118.  Defendant, Union by reporting an "alleged" debt as a "debt collector" to a consumer reporting agency generating "communication" in connection with the collection of a debt which they know was incorrect, from May of 2012 to filing of this action, in violation of 15 U.S.C § 1692e(8).

119.   Union violated 15 U.S.C § 1692e(2), by making false, deceptive, or misleading representation to the three consumer reporting agencies Experian, Equifax and TransUnion on multiple occasions as to the character, amount or legal status of an alleged debt, after receiving multiple disputes from Thomas.

120.   Union violated 15 U.S.C § 1692d(5), by refusing to respond to Thomas's timely

demand for validation and disputes notices, harassed him with numerous collection calls repeatedly.

121.    Defendant violated 15 U.S.C § 1692e (10) by use of false and deceptive means to collect or attempt to collect a nonexistent alleged debt or obtain information concerning a consumer.

122.    Union has not produced any evidence or factual documentation of any "alleged debt" Thomas could be responsible for, but violated Thomas with impunity for nearly one and one half years by continued violation of the consumer protection statutes.

123.    Thomas has never had any business relationship with Union.

124.    Defendant violated ROSENTHAL 1788.13(l) any communication by a licensed collection agency to a debtor demanding money unless the claim is actually assigned to the collection agency.

125.    Defendant violated § 1788.17, et seq. of the ROSENTHAL by continuously failing to comply with the statutory regulations contained within the FDCPA, 15 U.S.C. § 1692, et seq.

   **WHEREFORE,** Plaintiff demands judgment against UNION for actual or statutory damages, any attorney's fees and costs, pursuant to Cal. Civil Code § 1788.30(b).

## COUNT III
### VIOLATION OF THE TELEPHONE CONSUMER PROTECDTION ACT (TCPA), 47 U.S.C. § 227 BY DEFENDANT UNION

126.    Plaintiff restates and re-alleges herein all previous paragraphs 1-72.

VERIFIED COMPLAINT  Page 21 of 24

127. From April 30, 2012 to August 2, 2012 and forward Union using ATDS capable equipment as defined by 47 U.S.C. *§227* (a)(1)(A)(B), while blocking Caller ID, placed numerous calls to Plaintiff home Telephone with prior express consent.

128. Thomas, on several occasions informed Union operator that he had no business as defined by 47 U.S.C. *§227* (a)(2), with Union, had not given permission to call him, the calls were a violation of the consumer protection laws and demanded them to stop.  The calls have continued to the present time.

129. Union in attempt to collect on a erroneous non-existent alleged debt, and has demonstrated willful and knowing non-compliance of 47 U.S.C. *§227* (b)(1)(B), by initiating calls to the Plaintiff's number using an ATDS capable equipment and an artificial or prerecorded voice message after receipt of cease and desist from Plaintiff dated April 18, 2012.

130. Union has demonstrated willful or knowing non-compliance with 47 U.S.C. *§* 227(b)(1)(A) by using an ATDS to call the Plaintiff's number, after receipt of demand to cease and desist.  The Plaintiff has never given Union permission or prior express consent to call his phone.

131. While the calls from Union to Thomas were to his land line, further study of the TCPA has revealed that the use of ATDS capable equipment while blocking the caller ID, does in fact constitute violation of the statute:

    a) 47 U.S.C. *§* 227(b)(A)  to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-

**VERIFIED COMPLAINT**  Page **22** of **24**

  1)  **(iii)** to any telephone number assigned to a paging service, cellular telephone

    service, specialized mobile radio service, or other radio common carrier service,

    or any service for which the called party is charged for the call;

  b)  47 U.S.C. § 227(b)(B), to initiate any telephone call to any residential telephone line

    using an artificial or prerecorded voice to deliver a message without the prior express

    consent of the called party, unless the call is initiated for emergency purposes or is

    exempted by rule or order by the Commission under paragraph (2)(B).

132.  Thomas expressly instructed Union to communicate with him in writing only in his demand

  for validation letter in April 18, 2012; therefore Union was fully aware they would be in

  violation of the TCPA prior to initiating the calls to Thomas's phone.

133.  The Plaintiff and Union does not have or ever had an established business relationship

  within the meaning of 47 U.S.C. § 227.

134.  The TCPA provides a private right of action as stated in 47 U.S.C. 227(b)(3), damages of

  $500.00.

135.  Plaintiff is entitled to damages of $1.500.00 per violation pursuant to 47 U.S.C. *§227*

  (b)(3)(B).

    **WHEREFORE,** Plaintiff demands judgment for damages against ASH, for statutory

damages, and costs, pursuant to 47 U.S.C. *§227* (b)(3).

**<u>DEMAND FOR TRIAL BY JURY</u>**

  Plaintiff hereby demands a trial by jury of all issues as triable as matter of law.

  Date: July 30, 2013

                 Deon Thomas

1

VERIFICATION

2

3

    Plaintiff certify that they have read the pleadings set forth herein, and that to the best of his

4

knowledge, information and belief, formed after reasonable inquiry, believes that he is well

5

grounded in facts and warranted by existing law or a good faith argument for the extension,

6

modification or reversal of existing law, and that they are not interposed for any improper

7

purpose such as or needlessly increase the cost of litigation.

8

9

10

    I declare under penalty of perjury that the foregoing is true and correct and that this

11

declaration was executed in the City of Moreno Valley, County of Riverside, and State of

12

California.

13

14

15

DATED: July30, 2013

16

17

18

Deon Thomas

19

20

21

22

23

24

25

26

27

28

**VERIFIED COMPLAINT  Page 24 of 24**

## CERTIFICATE OF SERVICE

I Jelyse Langston, hereby certify that I am over the age of 18 and not a party to this action.  A copy of the foregoing was mailed to UNION ADJUSTMENT COMPANY, INC., agent for process, by first class mail addressed to:

UNION ADJUSTMENT COMPANY, INC., agent for process:
NATHAN RUBINFELD
11712 MOORPARK ST #308
STUDIO CITY CA 91604

I declare under perjury under the laws of the State of California that the forgoing is true

and correct and was executed on July 30, 2013.

Jelyse Langston

# EXHIBT A

Search Cornell

Search all of LII...  [Go]

ABOUT LII  /  GET THE LAW  /  FIND A LAWYER  /  LEGAL ENCYCLOPEDIA  /  HELP OUT

[Follow] 10K followers   [Like] 12k

USC  › Title 15 › Chapter 41 › Subchapter V › § 1692g     PREV NEXT

# 15 USC § 1692g – Validation of debts

**USC-prelim**   US Code   Notes   Updates   Authorities (CFR)

USCPrelim is a preliminary release and may be subject to further revision before it is released again as a final version.

Current through Pub. L. 113–9. (See Public Laws for the current Congress.)

### (a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty–day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty–day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

### (b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty–day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30–day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30–day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### (c) Admission of liability

## U.S. CODE TOOLBOX

SEARCH US CODE:  [        ]  [Go]

Wex: Commercial Law: Overview
@CLS: Clarke Business Law Institute

Download the PDF (1 pgs)
Title 15 USC, RSS Feed
Table of Popular Names
Parallel Table of Authorities

2

---

Donations cover only 20% of our costs

---

## LAW ABOUT... ARTICLES FROM WEX

- Fair Debt Collection Practices Act
- Debtor and creditor
- Dodd–Frank: Title XIV – Mortgage Reform and Anti–Predatory Lending Act
- Consumer credit
- Bankruptcy



The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

**(d) Legal pleadings**

A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

**(e) Notice provisions**

The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm–Leach–Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

LII has no control over and does not endorse any external Internet site that contains links to or references LII.

**GET INVOLVED**

LII Announce Blog

LII Supreme Court Bulletin

MAKE A DONATION
CONTRIBUTE CONTENT
BECOME A SPONSOR
GIVE FEEDBACK

**FIND A LAWYER**

Lawyers
near Moreno Valley, California

Lawyers: get listed for free!



**Craig Fong**

Immigration Law
Palm Springs, CA
gold Badge



**Stephen Brodsky**

Criminal Law, Domestic Violence, DUI & DWI, Juvenile Law, White Collar Crime
Temecula, CA
gold Badge



**Damian Jordan Nassiri**

Bankruptcy, Business Law, Civil Rights, Criminal Law, Employment Law, Foreclosure Defense, Medical Malpractice, Personal Injury, Products Liability
Riverside, CA
gold Badge



**Sean F. Leslie**

Animal & Dog Law, Bankruptcy, Construction Law, Criminal Law, DUI & DWI, Personal Injury, White Collar Crime
Palm Desert, CA
gold Badge



**David A. Welch**

Criminal Law, Domestic Violence, DUI & DWI, Juvenile Law, Traffic Tickets
San Bernardino, CA
silver Badge

*15 USC 1692g*

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

## TITLE 15 - COMMERCE AND TRADE
### CHAPTER 41 - CONSUMER CREDIT PROTECTION
### SUBCHAPTER V - DEBT COLLECTION PRACTICES

### § 1692g. Validation of debts

#### (a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

    **(1)** the amount of the debt;

    **(2)** the name of the creditor to whom the debt is owed;

    **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

    **(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

    **(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

#### (b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

#### (c) Admission of liability

The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

#### (d) Legal pleadings

A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

#### (e) Notice provisions

The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

# EXHIBT B

Search Cornell

Search all of LII...   Go

ABOUT LII / GET THE LAW / FIND A LAWYER / LEGAL ENCYCLOPEDIA / HELP OUT

Follow 10K followers   Like 12k

**USC** › Title 15 › Chapter 41 › Subchapter V › § 1692e   PREV NEXT

# 15 USC § 1692e - False or misleading representations

**USC-prelim**   US Code   Notes   Updates   Authorities (CFR)

USCPrelim is a preliminary release and may be subject to further revision before it is released again as a final version.

Current through Pub. L. 113–9. (See Public Laws for the current Congress.)

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to

**U.S. CODE TOOLBOX**

SEARCH US CODE:   Go
Wex: Commercial Law: Overview
@CLS: Clarke Business Law Institute

Download the PDF (1 pgs)
Title 15 USC, RSS Feed
Table of Popular Names
Parallel Table of Authorities

0

Donations cover only 20% of our costs



**LAW ABOUT... ARTICLES FROM WEX**

- Fair Debt Collection Practices Act
- Credit Card Accountability Responsibility and Disclosure Act (2009)
- False Advertising
- Debtor and creditor
- Canadian Anti–Spam Law of 2010: Legislative Background

collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a (f) of this title.

LII has no control over and does not endorse any external Internet site that contains links to or references LII.

## GET INVOLVED

LII Announce Blog

LII Supreme Court Bulletin

MAKE A DONATION
CONTRIBUTE CONTENT
BECOME A SPONSOR
GIVE FEEDBACK

## FIND A LAWYER

**Lawyers**
near Moreno Valley, California

 Lawyers: get listed for free!

**Damian Jordan Nassiri**

Bankruptcy, Business Law, Civil Rights, Criminal Law, Employment Law, Foreclosure Defense, Medical Malpractice, Personal Injury, Products Liability
Riverside, CA
gold Badge



**Craig Fong**

Immigration Law
Palm Springs, CA
gold Badge



**Stephen Brodsky**

Criminal Law, Domestic Violence, DUI & DWI, Juvenile Law, White Collar Crime
Temecula, CA
gold Badge



**Sean F. Leslie**

Animal & Dog Law, Bankruptcy,

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

## TITLE 15 - COMMERCE AND TRADE
### CHAPTER 41 - CONSUMER CREDIT PROTECTION
### SUBCHAPTER V - DEBT COLLECTION PRACTICES

### § 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)  The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2)  The false representation of—

(A)  the character, amount, or legal status of any debt; or

(B)  any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3)  The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4)  The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5)  The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6)  The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

(A)  lose any claim or defense to payment of the debt; or

(B)  become subject to any practice prohibited by this subchapter.

(7)  The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8)  Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9)  The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11)  The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12)  The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13)  The false representation or implication that documents are legal process.

(14)  The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15)  The false representation or implication that documents are not legal process forms or do not require action by the consumer.

**(16)**   The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a (f) of this title.

(Pub. L. 90–321, title VIII, § 807, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 877; amended Pub. L. 104–208, div. A, title II, § 2305(a), Sept. 30, 1996, 110 Stat. 3009–425.)

### Amendments

1996—Par. (11). Pub. L. 104–208 amended par. (11) generally. Prior to amendment, par. (11) read as follows: "Except as otherwise provided for communications to acquire location information under section 1692b of this title, the failure to disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose."

### Effective Date of 1996 Amendment

Section 2305(b) of div. A of Pub. L. 104–208 provided that: "The amendment made by subsection (a) [amending this section] shall take effect 90 days after the date of enactment of this Act [Sept. 30, 1996] and shall apply to all communications made after that date of enactment."

# EXHIBT C

Search Cornell

Search all of LII...   Go

ABOUT LII  /  GET THE LAW  /  FIND A LAWYER  /  LEGAL ENCYCLOPEDIA  /  HELP OUT

Follow   10K followers      Like   12k

**USC**   › Title 15 › Chapter 41 › Subchapter V › § 1692d      PREV NEXT

# 15 USC § 1692d - Harassment or abuse

**USC-prelim**   US Code   Notes   Updates   Authorities (CFR)

USCPrelim is a preliminary release and may be subject to further revision before it is released again as a final version.

Current through Pub. L. 113–9. (See Public Laws for the current Congress.)

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a (f) or 1681b (3) [1] of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

[1] See References in Text note below.
  LII has no control over and does not endorse any external Internet site that contains links to or references LII.

---

U.S. CODE TOOLBOX

SEARCH US CODE:              Go
Wex: Commercial Law: Overview
@CLS: Clarke Business Law Institute

Download the PDF (2 pgs)
Title 15 USC, RSS Feed
Table of Popular Names
Parallel Table of Authorities

    0

---

Donations cover only 20% of our costs

---

LAW ABOUT... ARTICLES FROM WEX

- Fair Debt Collection Practices Act
- Consumer credit
- California
- Debtor and creditor
- Credit Card Accountability Responsibility and Disclosure Act (2009)



REAL CHANGE WON'T HAPPEN WITHOUT YOU. CLICK HERE TO HELP CREATE OPPORTUNITIES FOR A BETTER LIFE FOR ALL.

Ad   GIVE. ADVOCATE. VOLUNTEER. LIVE UNITED®   United Way

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

## TITLE 15 - COMMERCE AND TRADE
## CHAPTER 41 - CONSUMER CREDIT PROTECTION
## SUBCHAPTER V - DEBT COLLECTION PRACTICES

### § 1692d. Harassment or abuse

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a (f) or 1681b (3) [1] of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

### *Footnotes*

[1] See References in Text note below.

(Pub. L. 90–321, title VIII, § 806, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 877.)

### References in Text

Section 1681b (3) of this title, referred to in par. (3), was redesignated section 1681b (a)(3) of this title by Pub. L. 104–208, div. A, title II, § 2403(a)(1), Sept. 30, 1996, 110 Stat. 3009–430.

# EXHIBT D

Search Cornell

Search all of LII... | Go

ABOUT LII / GET THE LAW / FIND A LAWYER / LEGAL ENCYCLOPEDIA / HELP OUT

Follow | 10K followers | Like | 12k

USC › Title 15 › Chapter 41 › Subchapter III › § 1681s–2   PREV NEXT

# 15 USC § 1681s–2 - Responsibilities of furnishers of information to consumer reporting agencies

**USC-prelim**   US Code   Notes   Updates   Authorities (CFR)

USCPrelim is a preliminary release and may be subject to further revision before it is released again as a final version.

Current through Pub. L. 113–9. (See Public Laws for the current Congress.)

U.S. CODE TOOLBOX

SEARCH US CODE: [        ] Go
Wex: Commercial Law: Overview
@CLS: Clarke Business Law Institute

Download the PDF (4 pgs)
Title 15 USC, RSS Feed
Table of Popular Names
Parallel Table of Authorities

1

Donations cover only 20% of our costs

**(a) Duty of furnishers of information to provide accurate information**

**(1) Prohibition**

**(A) Reporting information with actual knowledge of errors**

A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

**(B) Reporting information after notice and confirmation of errors**

A person shall not furnish information relating to a consumer to any consumer reporting agency if—

(i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

(ii) the information is, in fact, inaccurate.

**(C) No address requirement**

A person who clearly and conspicuously specifies to the consumer an address for notices referred to in subparagraph (B) shall not be subject to subparagraph (A); however, nothing in subparagraph (B) shall require a person to specify such an address.

**(D) Definition**

For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.

**(2) Duty to correct and update information**

A person who—

(A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate,

shall promptly notify the consumer reporting agency of that determination and provide

LAW ABOUT... ARTICLES FROM WEX

- Personal Information
- Consumer credit
- Fair Credit Reporting Act (FCRA)
- Dodd–Frank: Title IX – Investor Protections and Improvements to the Regulation of Securities
- Dodd–Frank: Title X – Bureau of Consumer Financial Protection

to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

**(3) Duty to provide notice of dispute**

If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

**(4) Duty to provide notice of closed accounts**

A person who regularly and in the ordinary course of business furnishes information to a consumer reporting agency regarding a consumer who has a credit account with that person shall notify the agency of the voluntary closure of the account by the consumer, in information regularly furnished for the period in which the account is closed.

**(5) Duty to provide notice of delinquency of accounts**

**(A) In general**

A person who furnishes information to a consumer reporting agency regarding a delinquent account being placed for collection, charged to profit or loss, or subjected to any similar action shall, not later than 90 days after furnishing the information, notify the agency of the date of delinquency on the account, which shall be the month and year of the commencement of the delinquency on the account that immediately preceded the action.

**(B) Rule of construction**

For purposes of this paragraph only, and provided that the consumer does not dispute the information, a person that furnishes information on a delinquent account that is placed for collection, charged for profit or loss, or subjected to any similar action, complies with this paragraph, if—

(i) the person reports the same date of delinquency as that provided by the creditor to which the account was owed at the time at which the commencement of the delinquency occurred, if the creditor previously reported that date of delinquency to a consumer reporting agency;

(ii) the creditor did not previously report the date of delinquency to a consumer reporting agency, and the person establishes and follows reasonable procedures to obtain the date of delinquency from the creditor or another reliable source and reports that date to a consumer reporting agency as the date of delinquency; or

(iii) the creditor did not previously report the date of delinquency to a consumer reporting agency and the date of delinquency cannot be reasonably obtained as provided in clause (ii), the person establishes and follows reasonable procedures to ensure the date reported as the date of delinquency precedes the date on which the account is placed for collection, charged to profit or loss, or subjected to any similar action, and reports such date to the credit reporting agency.

**(6) Duties of furnishers upon notice of identity theft−related information**

**(A) Reasonable procedures**

A person that furnishes information to any consumer reporting agency shall have in place reasonable procedures to respond to any notification that it receives from a consumer reporting agency under section 1681c-2 of this title relating to information resulting from identity theft, to prevent that person from refurnishing such blocked information.

**(B) Information alleged to result from identity theft**

If a consumer submits an identity theft report to a person who furnishes information to a consumer reporting agency at the address specified by that person for receiving such reports stating that information maintained by such person that purports to

## GET INVOLVED

LII Announce Blog

LII Supreme Court Bulletin

MAKE A DONATION
CONTRIBUTE CONTENT
BECOME A SPONSOR
GIVE FEEDBACK

## FIND A LAWYER

Lawyers
near Moreno Valley, California

Lawyers: get listed for free!



**Craig Fong**

Immigration Law
Palm Springs, CA
gold Badge



**Damian Jordan Nassiri**

Bankruptcy, Business Law, Civil Rights, Criminal Law, Employment Law, Foreclosure Defense, Medical Malpractice, Personal Injury, Products Liability
Riverside, CA
gold Badge



**Stephen Brodsky**

Criminal Law, Domestic Violence, DUI & DWI, Juvenile Law, White Collar Crime
Temecula, CA
gold Badge



**Sean F. Leslie**

Animal & Dog Law, Bankruptcy,

relate to the consumer resulted from identity theft, the person may not furnish such information that purports to relate to the consumer to any consumer reporting agency, unless the person subsequently knows or is informed by the consumer that the information is correct.

### (7) Negative information

#### (A) Notice to consumer required

(i) In general If any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency described in section 1681a (p) of this title furnishes negative information to such an agency regarding credit extended to a customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer.

(ii) Notice effective for subsequent submissions After providing such notice, the financial institution may submit additional negative information to a consumer reporting agency described in section 1681a (p) of this title with respect to the same transaction, extension of credit, account, or customer without providing additional notice to the customer.

#### (B) Time of notice

(i) In general The notice required under subparagraph (A) shall be provided to the customer prior to, or no later than 30 days after, furnishing the negative information to a consumer reporting agency described in section 1681a (p) of this title.

(ii) Coordination with new account disclosures If the notice is provided to the customer prior to furnishing the negative information to a consumer reporting agency, the notice may not be included in the initial disclosures provided under section 1637 (a) of this title.

#### (C) Coordination with other disclosures

The notice required under subparagraph (A)—

(i) may be included on or with any notice of default, any billing statement, or any other materials provided to the customer; and

(ii) must be clear and conspicuous.

#### (D) Model disclosure

(i) Duty of Bureau The Bureau shall prescribe a brief model disclosure that a financial institution may use to comply with subparagraph (A), which shall not exceed 30 words.

(ii) Use of model not required No provision of this paragraph may be construed to require a financial institution to use any such model form prescribed by the Bureau.

(iii) Compliance using model A financial institution shall be deemed to be in compliance with subparagraph (A) if the financial institution uses any model form prescribed by the Bureau under this subparagraph, or the financial institution uses any such model form and rearranges its format.

#### (E) Use of notice without submitting negative information

No provision of this paragraph shall be construed as requiring a financial institution that has provided a customer with a notice described in subparagraph (A) to furnish negative information about the customer to a consumer reporting agency.

#### (F) Safe harbor

A financial institution shall not be liable for failure to perform the duties required by this paragraph if, at the time of the failure, the financial institution maintained reasonable policies and procedures to comply with this paragraph or the financial institution reasonably believed that the institution is prohibited, by law, from contacting the consumer.

Construction Law, Criminal Law, DUI & DWI, Personal Injury, White Collar Crime
Palm Desert, CA
gold Badge



Mitchell Reed Sussman

Real Estate Law
Palm Springs, CA
silver Badge

See More Lawyers
All lawyers

**(G) Definitions**

For purposes of this paragraph, the following definitions shall apply:

(i) Negative information The term "negative information" means information concerning a customer's delinquencies, late payments, insolvency, or any form of default.

(ii) Customer; financial institution The terms "customer" and "financial institution" have the same meanings as in section 6809 of this title.

**(8) Ability of consumer to dispute information directly with furnisher**

**(A) In general**

The Bureau, in consultation with the Federal Trade Commission, the Federal banking agencies, and the National Credit Union Administration, shall prescribe regulations that shall identify the circumstances under which a furnisher shall be required to reinvestigate a dispute concerning the accuracy of information contained in a consumer report on the consumer, based on a direct request of a consumer.

**(B) Considerations**

In prescribing regulations under subparagraph (A), the agencies shall weigh—

(i) the benefits to consumers with the costs on furnishers and the credit reporting system;

(ii) the impact on the overall accuracy and integrity of consumer reports of any such requirements;

(iii) whether direct contact by the consumer with the furnisher would likely result in the most expeditious resolution of any such dispute; and

(iv) the potential impact on the credit reporting process if credit repair organizations, as defined in section 1679a (3) of this title, including entities that would be a credit repair organization, but for section 1679a (3)(B)(i) of this title, are able to circumvent the prohibition in subparagraph (G).

**(C) Applicability**

Subparagraphs (D) through (G) shall apply in any circumstance identified under the regulations promulgated under subparagraph (A).

**(D) Submitting a notice of dispute**

A consumer who seeks to dispute the accuracy of information shall provide a dispute notice directly to such person at the address specified by the person for such notices that—

(i) identifies the specific information that is being disputed;

(ii) explains the basis for the dispute; and

(iii) includes all supporting documentation required by the furnisher to substantiate the basis of the dispute.

**(E) Duty of person after receiving notice of dispute**

After receiving a notice of dispute from a consumer pursuant to subparagraph (D), the person that provided the information in dispute to a consumer reporting agency shall—

(i) conduct an investigation with respect to the disputed information;

(ii) review all relevant information provided by the consumer with the notice;

(iii) complete such person's investigation of the dispute and report the results of the investigation to the consumer before the expiration of the period under section 1681i (a)(1) of this title within which a consumer reporting agency would be required to complete its action if the consumer had elected to dispute the information under that section; and

(iv) if the investigation finds that the information reported was inaccurate, promptly notify each consumer reporting agency to which the person furnished the inaccurate information of that determination and provide to the agency any correction to that information that is necessary to make the information provided by the person accurate.

(F) Frivolous or irrelevant dispute

(i) In general This paragraph shall not apply if the person receiving a notice of a dispute from a consumer reasonably determines that the dispute is frivolous or irrelevant, including—

(I) by reason of the failure of a consumer to provide sufficient information to investigate the disputed information; or

(II) the submission by a consumer of a dispute that is substantially the same as a dispute previously submitted by or for the consumer, either directly to the person or through a consumer reporting agency under subsection (b) of this section, with respect to which the person has already performed the person's duties under this paragraph or subsection (b) of this section, as applicable.

(ii) Notice of determination Upon making any determination under clause (i) that a dispute is frivolous or irrelevant, the person shall notify the consumer of such determination not later than 5 business days after making such determination, by mail or, if authorized by the consumer for that purpose, by any other means available to the person.

(iii) Contents of notice A notice under clause (ii) shall include—

(I) the reasons for the determination under clause (i); and

(II) identification of any information required to investigate the disputed information, which may consist of a standardized form describing the general nature of such information.

(G) Exclusion of credit repair organizations

This paragraph shall not apply if the notice of the dispute is submitted by, is prepared on behalf of the consumer by, or is submitted on a form supplied to the consumer by, a credit repair organization, as defined in section 1679a (3) of this title, or an entity that would be a credit repair organization, but for section 1679a (3)(B)(i) of this title.

(9) Duty to provide notice of status as medical information furnisher

A person whose primary business is providing medical services, products, or devices, or the person's agent or assignee, who furnishes information to a consumer reporting agency on a consumer shall be considered a medical information furnisher for purposes of this subchapter, and shall notify the agency of such status.

(b) Duties of furnishers of information upon notice of dispute

(1) In general

After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i (a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or

incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

**(2) Deadline**

A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i (a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.

**(c) Limitation on liability**

Except as provided in section 1681s (c)(1)(B) of this title, sections 1681n and 1681o of this title do not apply to any violation of—

(1) subsection (a) of this section, including any regulations issued thereunder;

(2) subsection (e) of this section, except that nothing in this paragraph shall limit, expand, or otherwise affect liability under section 1681n or 1681o of this title, as applicable, for violations of subsection (b) of this section; or

(3) subsection (e) ofsection 1681m of this title.

**(d) Limitation on enforcement**

The provisions of law described in paragraphs (1) through (3) of subsection (c) of this section (other than with respect to the exception described in paragraph (2) of subsection (c) of this section) shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title.

**(e) Accuracy guidelines and regulations required**

**(1) Guidelines**

The Bureau shall, with respect to persons or entities that are subject to the enforcement authority of the Bureau under section 1681s of this title—

(A) establish and maintain guidelines for use by each person that furnishes information to a consumer reporting agency regarding the accuracy and integrity of the information relating to consumers that such entities furnish to consumer reporting agencies, and update such guidelines as often as necessary; and

(B) prescribe regulations requiring each person that furnishes information to a consumer reporting agency to establish reasonable policies and procedures for implementing the guidelines established pursuant to subparagraph (A).

**(2) Criteria**

In developing the guidelines required by paragraph (1)(A), the Bureau shall—

(A) identify patterns, practices, and specific forms of activity that can compromise the accuracy and integrity of information furnished to consumer reporting agencies;

(B) review the methods (including technological means) used to furnish information relating to consumers to consumer reporting agencies;

(C) determine whether persons that furnish information to consumer reporting agencies maintain and enforce policies to ensure the accuracy and integrity of information furnished to consumer reporting agencies; and

(D) examine the policies and processes that persons that furnish information to consumer reporting agencies employ to conduct reinvestigations and correct inaccurate information relating to consumers that has been furnished to consumer

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

## TITLE 15 - COMMERCE AND TRADE
### CHAPTER 41 - CONSUMER CREDIT PROTECTION
### SUBCHAPTER III - CREDIT REPORTING AGENCIES

### § 1681s–2. Responsibilities of furnishers of information to consumer reporting agencies

(a) **Duty of furnishers of information to provide accurate information**

   (1) **Prohibition**

   (A) **Reporting information with actual knowledge of errors**

   A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

   (B) **Reporting information after notice and confirmation of errors**

   A person shall not furnish information relating to a consumer to any consumer reporting agency if—

   (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

   (ii) the information is, in fact, inaccurate.

   (C) **No address requirement**

   A person who clearly and conspicuously specifies to the consumer an address for notices referred to in subparagraph (B) shall not be subject to subparagraph (A); however, nothing in subparagraph (B) shall require a person to specify such an address.

   (D) **Definition**

   For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.

   (2) **Duty to correct and update information**

   A person who—

   (A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

   (B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate,

   shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

   (3) **Duty to provide notice of dispute**

   If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

   (4) **Duty to provide notice of closed accounts**

   A person who regularly and in the ordinary course of business furnishes information to a consumer reporting agency regarding a consumer who has a credit account with that person shall notify the

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

agency of the voluntary closure of the account by the consumer, in information regularly furnished for the period in which the account is closed.

### (5) Duty to provide notice of delinquency of accounts

#### (A) In general

A person who furnishes information to a consumer reporting agency regarding a delinquent account being placed for collection, charged to profit or loss, or subjected to any similar action shall, not later than 90 days after furnishing the information, notify the agency of the date of delinquency on the account, which shall be the month and year of the commencement of the delinquency on the account that immediately preceded the action.

#### (B) Rule of construction

For purposes of this paragraph only, and provided that the consumer does not dispute the information, a person that furnishes information on a delinquent account that is placed for collection, charged for profit or loss, or subjected to any similar action, complies with this paragraph, if—

(i) the person reports the same date of delinquency as that provided by the creditor to which the account was owed at the time at which the commencement of the delinquency occurred, if the creditor previously reported that date of delinquency to a consumer reporting agency;

(ii) the creditor did not previously report the date of delinquency to a consumer reporting agency, and the person establishes and follows reasonable procedures to obtain the date of delinquency from the creditor or another reliable source and reports that date to a consumer reporting agency as the date of delinquency; or

(iii) the creditor did not previously report the date of delinquency to a consumer reporting agency and the date of delinquency cannot be reasonably obtained as provided in clause (ii), the person establishes and follows reasonable procedures to ensure the date reported as the date of delinquency precedes the date on which the account is placed for collection, charged to profit or loss, or subjected to any similar action, and reports such date to the credit reporting agency.

### (6) Duties of furnishers upon notice of identity theft-related information

#### (A) Reasonable procedures

A person that furnishes information to any consumer reporting agency shall have in place reasonable procedures to respond to any notification that it receives from a consumer reporting agency under section 1681c–2 of this title relating to information resulting from identity theft, to prevent that person from refurnishing such blocked information.

#### (B) Information alleged to result from identity theft

If a consumer submits an identity theft report to a person who furnishes information to a consumer reporting agency at the address specified by that person for receiving such reports stating that information maintained by such person that purports to relate to the consumer resulted from identity theft, the person may not furnish such information that purports to relate to the consumer to any consumer reporting agency, unless the person subsequently knows or is informed by the consumer that the information is correct.

### (7) Negative information

#### (A) Notice to consumer required

(i) In general

If any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency described in section 1681a (p) of this title furnishes negative information to such an agency regarding credit

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

extended to a customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer.

**(ii)  Notice effective for subsequent submissions**

After providing such notice, the financial institution may submit additional negative information to a consumer reporting agency described in section 1681a (p) of this title with respect to the same transaction, extension of credit, account, or customer without providing additional notice to the customer.

**(B)  Time of notice**

**(i)  In general**

The notice required under subparagraph (A) shall be provided to the customer prior to, or no later than 30 days after, furnishing the negative information to a consumer reporting agency described in section 1681a (p) of this title.

**(ii)  Coordination with new account disclosures**

If the notice is provided to the customer prior to furnishing the negative information to a consumer reporting agency, the notice may not be included in the initial disclosures provided under section 1637 (a) of this title.

**(C)  Coordination with other disclosures**

The notice required under subparagraph (A)—

**(i)**  may be included on or with any notice of default, any billing statement, or any other materials provided to the customer; and

**(ii)**  must be clear and conspicuous.

**(D)  Model disclosure**

**(i)  Duty of Bureau**

The Bureau shall prescribe a brief model disclosure that a financial institution may use to comply with subparagraph (A), which shall not exceed 30 words.

**(ii)  Use of model not required**

No provision of this paragraph may be construed to require a financial institution to use any such model form prescribed by the Bureau.

**(iii)  Compliance using model**

A financial institution shall be deemed to be in compliance with subparagraph (A) if the financial institution uses any model form prescribed by the Bureau under this subparagraph, or the financial institution uses any such model form and rearranges its format.

**(E)  Use of notice without submitting negative information**

No provision of this paragraph shall be construed as requiring a financial institution that has provided a customer with a notice described in subparagraph (A) to furnish negative information about the customer to a consumer reporting agency.

**(F)  Safe harbor**

A financial institution shall not be liable for failure to perform the duties required by this paragraph if, at the time of the failure, the financial institution maintained reasonable policies and procedures to comply with this paragraph or the financial institution reasonably believed that the institution is prohibited, by law, from contacting the consumer.

**(G)  Definitions**

For purposes of this paragraph, the following definitions shall apply:

**(i)  Negative information**

**15 USC 1681s–2**

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

The term "negative information" means information concerning a customer's delinquencies, late payments, insolvency, or any form of default.

**(ii)  Customer; financial institution**

The terms "customer" and "financial institution" have the same meanings as in section 6809 of this title.

**(8)  Ability of consumer to dispute information directly with furnisher**

**(A)  In general**

The Bureau, in consultation with the Federal Trade Commission, the Federal banking agencies, and the National Credit Union Administration, shall prescribe regulations that shall identify the circumstances under which a furnisher shall be required to reinvestigate a dispute concerning the accuracy of information contained in a consumer report on the consumer, based on a direct request of a consumer.

**(B)  Considerations**

In prescribing regulations under subparagraph (A), the agencies shall weigh—

**(i)**  the benefits to consumers with the costs on furnishers and the credit reporting system;

**(ii)**  the impact on the overall accuracy and integrity of consumer reports of any such requirements;

**(iii)**  whether direct contact by the consumer with the furnisher would likely result in the most expeditious resolution of any such dispute; and

**(iv)**  the potential impact on the credit reporting process if credit repair organizations, as defined in section 1679a (3) of this title, including entities that would be a credit repair organization, but for section 1679a (3)(B)(i) of this title, are able to circumvent the prohibition in subparagraph (G).

**(C)  Applicability**

Subparagraphs (D) through (G) shall apply in any circumstance identified under the regulations promulgated under subparagraph (A).

**(D)  Submitting a notice of dispute**

A consumer who seeks to dispute the accuracy of information shall provide a dispute notice directly to such person at the address specified by the person for such notices that—

**(i)**  identifies the specific information that is being disputed;

**(ii)**  explains the basis for the dispute; and

**(iii)**  includes all supporting documentation required by the furnisher to substantiate the basis of the dispute.

**(E)  Duty of person after receiving notice of dispute**

After receiving a notice of dispute from a consumer pursuant to subparagraph (D), the person that provided the information in dispute to a consumer reporting agency shall—

**(i)**  conduct an investigation with respect to the disputed information;

**(ii)**  review all relevant information provided by the consumer with the notice;

**(iii)**  complete such person's investigation of the dispute and report the results of the investigation to the consumer before the expiration of the period under section 1681i (a)(1) of this title within which a consumer reporting agency would be required to complete its action if the consumer had elected to dispute the information under that section; and

**(iv)**  if the investigation finds that the information reported was inaccurate, promptly notify each consumer reporting agency to which the person furnished the inaccurate

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

information of that determination and provide to the agency any correction to that information that is necessary to make the information provided by the person accurate.

**(F) Frivolous or irrelevant dispute**

**(i)** In general

This paragraph shall not apply if the person receiving a notice of a dispute from a consumer reasonably determines that the dispute is frivolous or irrelevant, including—

**(I)** by reason of the failure of a consumer to provide sufficient information to investigate the disputed information; or

**(II)** the submission by a consumer of a dispute that is substantially the same as a dispute previously submitted by or for the consumer, either directly to the person or through a consumer reporting agency under subsection (b) of this section, with respect to which the person has already performed the person's duties under this paragraph or subsection (b) of this section, as applicable.

**(ii)** Notice of determination

Upon making any determination under clause (i) that a dispute is frivolous or irrelevant, the person shall notify the consumer of such determination not later than 5 business days after making such determination, by mail or, if authorized by the consumer for that purpose, by any other means available to the person.

**(iii)** Contents of notice

A notice under clause (ii) shall include—

**(I)** the reasons for the determination under clause (i); and

**(II)** identification of any information required to investigate the disputed information, which may consist of a standardized form describing the general nature of such information.

**(G) Exclusion of credit repair organizations**

This paragraph shall not apply if the notice of the dispute is submitted by, is prepared on behalf of the consumer by, or is submitted on a form supplied to the consumer by, a credit repair organization, as defined in section 1679a (3) of this title, or an entity that would be a credit repair organization, but for section 1679a (3)(B)(i) of this title.

**(9) Duty to provide notice of status as medical information furnisher**

A person whose primary business is providing medical services, products, or devices, or the person's agent or assignee, who furnishes information to a consumer reporting agency on a consumer shall be considered a medical information furnisher for purposes of this subchapter, and shall notify the agency of such status.

**(b) Duties of furnishers of information upon notice of dispute**

**(1) In general**

After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

**(A)** conduct an investigation with respect to the disputed information;

**(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i (a)(2) of this title;

**(C)** report the results of the investigation to the consumer reporting agency;

**(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

**(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

> **(i)** modify that item of information;
>
> **(ii)** delete that item of information; or
>
> **(iii)** permanently block the reporting of that item of information.

### (2) Deadline

A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i (a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.

### (c) Limitation on liability

Except as provided in section 1681s (c)(1)(B) of this title, sections 1681n and 1681o of this title do not apply to any violation of—

**(1)** subsection (a) of this section, including any regulations issued thereunder;

**(2)** subsection (e) of this section, except that nothing in this paragraph shall limit, expand, or otherwise affect liability under section 1681n or 1681o of this title, as applicable, for violations of subsection (b) of this section; or

**(3)** subsection (e) of section 1681m of this title.

### (d) Limitation on enforcement

The provisions of law described in paragraphs (1) through (3) of subsection (c) of this section (other than with respect to the exception described in paragraph (2) of subsection (c) of this section) shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title.

### (e) Accuracy guidelines and regulations required

### (1) Guidelines

The Bureau shall, with respect to persons or entities that are subject to the enforcement authority of the Bureau under section 1681s of this title—

**(A)** establish and maintain guidelines for use by each person that furnishes information to a consumer reporting agency regarding the accuracy and integrity of the information relating to consumers that such entities furnish to consumer reporting agencies, and update such guidelines as often as necessary; and

**(B)** prescribe regulations requiring each person that furnishes information to a consumer reporting agency to establish reasonable policies and procedures for implementing the guidelines established pursuant to subparagraph (A).

### (2) Criteria

In developing the guidelines required by paragraph (1)(A), the Bureau shall—

**(A)** identify patterns, practices, and specific forms of activity that can compromise the accuracy and integrity of information furnished to consumer reporting agencies;

**(B)** review the methods (including technological means) used to furnish information relating to consumers to consumer reporting agencies;

**(C)** determine whether persons that furnish information to consumer reporting agencies maintain and enforce policies to ensure the accuracy and integrity of information furnished to consumer reporting agencies; and